CUMBERLAND MOTOR FREIGHT, Inc.,
et al., Appellants,

v.

HUBER & HUBER MOTOR EXPRESS,
Inc., et al., Appellees.

Court of Appeals of Kentucky.

March 14, 1958.

Robert M. Pearce, McChensey, McChesney, Kinker & Pearce, Rudy Yessin, Smith, Reed & Leary, Frankfort, for appellants.

George L. Willis III, Asst. Atty. Gen., R. Vincent Goodlett, Hazelrigg & Cox, Frankfort, Stanley Mayer, Louisville, for appellees.

CULLEN, Commissioner.

The Department of Motor Transportation of Kentucky entered an order approving the sale and transfer, from Hayes Freight Lines, Inc., to Cumberland Freight Lines, Inc., of several common carrier truck certificates authorizing intrastate operations between various points in Kentucky. An appeal was taken to the Franklin Circuit Court by a number of other motor carriers who had protested the transfer. The court entered judgment setting aside the order, and directing the department to enter an order denying the transfer. Hayes and Cumberland have appealed from the judgment.

The basis for the protest against the transfer was that the transfer would be against the public interest because (for reasons hereinafter explained) the transfer would result in an increase in the number of interstate carriers operating over the routes in question. The department treated the protest as raising questions of interstate commerce, and ruled that it could not consider any effect the transfer might have on interstate commerce. The circuit court not only held that the department was in error concerning the extent of its authority, but ordered the department to deny the transfer. For a proper understanding of the issues, it will be necessary to describe the status of each of the parties, and make reference to applicable statutes, both state and federal.

Hayes operates in interstate commerce in Kentucky (and between Kentucky and certain other states) by virtue of a *certificate* of convenience and necessity issued by the Interstate Commerce Commission. Hayes also carries on intrastate operations over the same routes within Kentucky, by virtue of certificates issued by the Department of Motor Transportation of Kentucky.

Cumberland operates in intrastate commerce over various routes in Kentucky, by virtue of certificates issued by the Department of Motor Transportation, and also carries on interstate operations over the same routes by authority of *registration* with the Interstate Commerce Commission under Section 206(a) (1) of Part II of the Federal Motor Carrier Act.

The protesting carriers operate both in interstate and intrastate commerce over the routes covered by the intrastate certificates that Hayes seeks to transfer to Cumberland.

If the transfer of the certificates to Cumberland is approved, Cumberland will be able to *register* the certificates with the Interstate Commerce Commission and thereby acquire the right to operate in interstate commerce over the routes covered by these certificates. (It is stipulated that Cumberland *will* register the certificates.) Hayes will be able to continue operating in interstate commerce over the same routes, by virtue of Hayes' *certificate* from the I.C.C. The result will be that there will be an additional interstate carrier over these routes. The protesting carriers assert that this will result in diverting from them some of the business upon which they depend for their overall operations, and will have an adverse effect upon their ability to continue to render adequate service as to both interstate and intrastate shipments.

It will be observed that the problem arises out of the fact that Cumberland can obtain the right to operate in interstate commerce by merely registering the intrastate certificates with the I.C.C. This right is granted by Section 206(a) (1) of Part II of the Federal Motor Carrier Act, which provides in substance that a motor carrier engaged in operations solely within one state need not obtain a certificate of convenience and necessity from the I.C.C. for operations between places in that state if the carrier has a certificate for intrastate operation between those places issued by an authorized regulatory body of that state. All the carrier is required to do is to register the state certificate and meet certain routine requirements.

The Kentucky statute governing transfer of motor carrier certificates, KRS 281.-630(6), provides that a transfer shall not be approved if "it would be against the public interest." The question that we must decide is whether this means that the De-partment of Motor Transportation has the authority, or the duty, to consider operations in interstate commerce as they may bear upon the public interest of Kentucky.

In cases where a motor carrier holds both interstate and intrastate certificates covering the same routes, the Interstate Commerce Commission will not approve a transfer of the interstate certificate unless the carrier also secures approval by the state regulatory body of an accompanying transfer of the intrastate certificate. This is because the I.C.C. has established a regulatory policy against a "split" of operating rights that may result in the creation of an additional interstate carrier through registration under Section 206(a) (1) of Part II of the Federal Motor Carrier Act. See Wilson Storage & Transfer Co.—Purchase—Dakota Transportation, Inc., 36 M.C.C. 221; A. W. Hayes—Purchase—Epperson Drayage Co., 37 M.C.C. 104; Freeman A. Leas and Mary Ann Leas—Control; Courier Express, Inc.—Purchase—The Huber Motor Transportation Company, No. FC-F-3238, 45 M.C.C. 688; B. C. Simpson—Purchase—A. A. A. Highway Express, Inc. (Thomas M. Stubbs, Trustee), No. MC-F-3090, 45 M.C.C. 463; Edward A. Kaplan—Control, The Kaplan Trucking Company—Purchase—Dewey M. Augsburger and Nora A. Augsburger, No. MC-F-5052, 58 M.C.C. 500.

The question here is whether the Department of Motor Transportation may decline to approve a transfer of an intrastate certificate, by a carrier who also holds an interstate certificate for the same route, if the result of the transfer will be the creation of an additional interstate carrier whose operations may so divert the traffic in interstate freight as to adversely affect the entire freight hauling business, both interstate and intrastate, over the route in question. We can see no reason why the department does not have this authority. There is no question of *interference* with interstate commerce, because the depart-ment would not be exercising any control

over interstate commerce, but would merely be controlling intrastate operating rights.

■ While a carrier may be considered to have some measure of protectible interest in an intrastate certificate, and the value arising from transferability may be considered to be within the scope of the protectible interest, nevertheless we are not convinced that a carrier who chooses to acquire also an interstate certificate and to engage in a combined intrastate-interstate operation has any *right* to sever his operation and sell only a part of his operating rights. We think it is within the power of the Department of Motor Transportation, in carrying out its statutory duty of protection of the public interest, to determine as a matter of regulatory policy that a carrier holding both interstate and intrastate certificates for the same route will not be permitted to sell the intrastate certificate and retain the interstate certificate, where to do so would adversely affect the ability of other carriers to render adequate service to the public in Kentucky. The department does not have any initial control over whether a carrier may obtain an interstate certificate, but if the carrier elects to obtain such a certificate and thus impose interstate commerce aspects upon his transportation operations, he should not be entitled to take the position that the department must ignore the interstate commerce part of his operations. By virtue of his act in obtaining an interstate certificate, he has made it possible for a transfer of his intrastate certificate to create a situation that otherwise would not occur. We think the Department of Motor Transportation is not required to remain blind to the fact that a transfer of an intrastate certificate by a carrier who also holds an interstate certificate will have ultimate effects different from those arising where the carrier holds only the intrastate certificate. It may be considered that the carrier, by obtaining an interstate certificate, has voluntarily limited the transferability of his intrastate certificate.

■■ It is our opinion that the Department of Motor Transportation has the power, when application for transfer of an intrastate certificate is made by a carrier who holds an interstate certificate for the same route, to consider the question of how the public interest will be affected as a result of the transferee's obtaining interstate operating rights, through registration under the Federal Motor Carrier Act. The department was in error in determining that it did not have such power. However, we think the circuit court also was in error in ordering the department to deny the transfer. Questions both of fact finding and of regulatory policy are involved, and the case should have been remanded to the department with directions to exercise its authorized power to determine whether the transfer will be against the public interest.

The protesting carriers have made a contention that the Department of Motor Transportation has no jurisdiction to *pass upon* the transfer of intrastate certificates, because of the material effect the transfer will have upon interstate commerce. They say that the jurisdiction rests solely with the I.C.C. The argument seems to be that since the I.C.C. will not approve a splitting of interstate and intrastate operating rights, in that a transfer of an interstate certificate will not be approved by the I.C.C. unless there is an accompanying transfer of intrastate certificates covering the same routes, any question that involves a transfer of intrastate certificates by a carrier who also holds interstate certificates falls solely within the jurisdiction of I.C.C.

This argument has no merit, because Section 206(a) (1), Part II, of the Federal Motor Carrier Act expressly recognizes the jurisdiction of the state regulatory bodies over the issuance and transfer of intrastate certificates. Furthermore, the I.C.C. has said that it has no means of preventing a transfer of an intrastate certificate. H. A. Day Common Carrier Application, No. MC-97461, 53 M.C.C. 672; Sunset Motor Lines Extension—Interstate Operations,

No. MC-60388, 61 M.C.C. 123. If the state regulatory body had no jurisdiction to consider a transfer of the intrastate certificates, the question of a splitting of operating rights arising from a transfer of intrastate certificates could never arise. The I.C.C. could not exercise any jurisdiction, because it has no authority to provide for a transfer of interstate operating rights based upon registration under Section 206(a) (1). Those rights can exist only in favor of a carrier who holds intrastate certificates, and obviously the I.C.C. cannot order the state regulatory body to make a transfer of the intrastate certificates. If the argument should be sustained, the result would be that there never could be a transfer of an intrastate certificate, by a carrier holding an interstate certificate, because even after the I.C.C. had approved a transfer of the interstate certificate the state regulatory body would have no jurisdiction to authorize a transfer of the intrastate certificate.

The judgment is reversed, with directions to enter judgment remanding the case to the Department of Motor Transportation for proceedings in conformity with this opinion.