In the Matter of OSWEGO TRANSPORTATION LINES, INC., Appellant, against BENJAMIN F. FEINBERG et al., Constituting the Public Service Commission of the State of New York, Respondents.

Third Department, February 5, 1959.

*Norman M. Pinsky* for appellant.

*Kent H. Brown, George H. Kenny* and *Norman Abell* for respondents.

BERGAN, J.   The New York Public Service Commission has imposed a condition upon its approval of a transfer to the petitioner of the commission's certificate of convenience and necessity from Charles J. Donnelly, its present holder, for a motor freight route entirely within the State.   The condition imposed, in effect, is that petitioner as the new holder of the certificate of convenience and necessity shall not engage under the authority of that certificate in interstate commerce within New York.

The issue in the case is whether the Public Service Commission has exceeded its authority by imposing the condition, i.e., whether, in petitioner's words, the imposition is '' an infringement upon the exclusive jurisdiction of the Federal Government '' over interstate commerce.   The court at Special Term has held that the condition imposed is valid; we are of the same opinion.

The authority of the Public Service Commission in the area of interstate commerce carried on by motor freight carrier entirely within the State of New York is best to be understood

by reading both Federal and State legislative enactments. It is needful, also, to keep quite clearly in view the fact that the problem here does not arise from a regulation of the transportation of goods beyond the State of New York, but entirely from regulation of transportation within this State of goods that will by other means go beyond the State; that the goods moving in commerce are themselves "interstate"; but the regulated physical movements of transportation here involved are within the State.

It must be kept in mind, also, of course, that Congress has constitutional authority over such interstate commerce moving within a State. But in undertaking to exercise its constitutional power over interstate commerce in this field Congress has delegated to the New York Public Service Commission jurisdiction to pass on the certification of convenience and necessity for the motor transportation of goods in interstate commerce entirely within New York. This delegation of power is quite implicit in the language of the statute (Motor Carrier Act, § 206, subd. [a]; U. S. Code, tit. 49, § 306, subd. [a]).

In *Gulf Coast Motor Freight Lines* v. *United States* (35 F. Supp. 136, 137) the court discussed the scope of State power over interstate commerce under this congressional act. It was more accurate, the court felt, to say that Congress was "invoking" a power "already in existence" (i.e. the power the States had over interstate motor commerce before Congress occupied this field) than to say Congress was "granting power".

But whether the Congressional concept was one of occupying the area of power and confirming and continuing in that area a power already exercised by the States or invoking or delegating a new one, the power must be deemed to stem from a Congressional confirmation and acceptance; and since the difference finally becomes one of close semantics between invocation or delegation, it seems more satisfactory and more easily understandable to treat it in simple terms as delegation of Federal power to the States.

In the end the scope of power, confirmed if already existing; invoked, if latent; or delegated if it would not otherwise have continued to exist, amounts to the same thing: the State agency has power to consider the consequences to interstate commerce of its certificates of convenience and necessity.

The Federal statute approaches the subject of regulation of interstate motor common carriers by a general interdiction of such commerce "unless" a certificate of convenience and necessity has been issued by the Interstate Commerce Commission. In this respect the statute runs: "No common carrier * * *

shall engage * * * unless there is in force * * * a certificate of convenience and necessity " (§ 206, subd. [a]).

. There is a statutory exception to this interdiction of primary importance. In a State having a public agency authorized to " grant or approve " certificates of convenience and necessity for motor common carriers operating within the State, it is not necessary to obtain a certificate of convenience and necessity for such interstate commerce within such State from the Interstate Commerce Commission " if " the carrier has obtained " such " certificate of convenience and necessity from the State agency.

Since Congress was by this statute prohibiting any engagement in interstate commerce either within or among States without a certificate of convenience and necessity, but permitting interstate commerce to be conducted within a State upon the certification of a State agency of convenience and necessity, it is not easy to avoid the conclusion that each such State agency received from Congress a delegation of power to examine and to determine the question of convenience and necessity of an application for a certificate in its relation to interstate commerce within the area of the State agency's authority.

Congress on one hand prohibited all interstate commerce by motor common carrier without a certificate of convenience and necessity; and on the other it accepted as sufficient to meet congressional standards of certification for interstate commerce within a State, the determination of the appropriate State agency. This means the State agency ought to examine the question of convenience and necessity in its relation to interstate commerce under the Federal delegation of authority. That the State agency must also, and primarily, examine the question of intrastate convenience and necessity for the State whose agency it is, neither negates the Federal delegation nor eliminates the dual nature of the determination in this special field touching upon the areas of Federal and State transportation.

The interstate certificate need not be obtained from the Interstate Commerce Commission, in the words of the statute, if " such carrier has obtained such certificate from such board ". This is patent delegation. The " such " carrier is one engaged in interstate commerce within a State; the " such " certificate is one of convenience and necessity relating, as the statute plainly says, to interstate commerce and the " such " board is the State agency.

All this is made more explicit by the words which follow in immediate context, which would be quite unnecessary if there had been any intent other than one of delegation to a non-Federal

agency: that " [s]uch transportation ", meaning interstate within a State, shall " be otherwise subject to " the jurisdiction of the Interstate Commerce Commission. Except in this precise and limited area of specific delegation to State agencies, Congress preserved from question the general jurisdiction of its own commission over interstate commerce within, as well as among States.

The Supreme Court of Kentucky in interpreting this statute ruled, that the Kentucky Department of Motor Transportation may consider the effect on interstate commerce within the State as well as the effect on intrastate commerce of a transfer of a certificate of convenience and necessity issued by the Kentucky Department by a truck operator who also owned and wanted to retain an Interstate Commerce Commission certificate for the same operation (*Cumberland Motor Freight* v. *Huber & Huber Motor Express,* 311 S. W. 2d 398 [Ky.]). That case has points of similarity, in the basic principles involved, to the case now here.

Heavy stress is laid by petitioner in its argument before us on the language of the court in *Castle* v. *Hayes Freight Lines* (348 U. S. 61 [1954]). That decision had no relationship to the delegation of power by Congress to the States in the issuance of certificates of convenience and necessity for interstate commerce within a State by a State agency; on the contrary it related to the power of Illinois to suspend, as a penalty for the manner in which its State roads were used, the right of an interstate carrier operating under an Interstate Commerce Commission certificate to make further use of the roads of Illinois.

This was not an exercise of power within a Congressional delegation, but rather, in the view of the Supreme Court, an act of power running against the Congressional will expressed in the Motor Carrier Act. The court held that the Motor Carrier Act cut down the former powers of the States to deal with interstate motor carriers as such powers had long been exercised before the pre-emption of Federal jurisdiction in this enactment. The court did not consider, and the question was not before it, the powers given State agencies within the frame of the act.

The ultimate argument pursued by petitioner in this court is that upon acquiring Donnelly's certificate its right to engage in interstate commerce within the State of New York would be beyond the jurisdiction of any public agency; that the Public Service Commission could not regulate it because its exercise of a regulatory power would amount to an intrusion into an exclusive Federal area and its restriction now complained of " is unconstitutional "; and on the other hand, petitioner's right to

engage in interstate commerce within New York " cannot be restricted or otherwise limited even by the Interstate Commerce Commission ".

The statutes of the United States and New York read together do not, in our view, leave this vacuum in regulatory power which petitioner's argument envisages.

Nothing in the condition imposed by the Public Service Commission carries any restraint or limitation on a new application by the petitioner itself on a fresh showing of convenience and necessity. This is the way such authorization is normally contemplated within both the Federal and State statutes, and is the usual way authority is obtained to do this kind of interstate business within a State.

Nor is the condition a restriction on any " right " possessed by petitioner to engage in interstate commerce; and when the sequence of events leading to the condition which has been imposed is examined it will be seen at once that the condition is not only consistent with Federal and State statutes, but entirely reasonable.

It is a needful simplification of the sequence of relevant events in this case to say that a predecessor of Donnelly, the petitioner's transferor, had obtained an Interstate Commerce Commission certificate of convenience and necessity for this route within the State of New York in 1935, when such certificate first was needed because of the Congressional enactment that year of the Motor Carrier Act.

In 1935 such a certificate was issued by the Federal agency for an interstate operation entirely within New York rather than by the Public Service Commission because New York had not yet established any authority over this kind of an operation within the State; and thus the Congressional delegation to a State agency where one was authorized by the State to act in this field of regulation was not then operative in New York.

The delegation became operative on the enactment in 1938 by the New York Legislature of article 3-B of the Public Service Law. Although the Public Service Commission issued to the predecessor of Donnelly an intrastate certificate for the route in 1938 after the enactment of the New York statute, the 1935 Interstate Commerce Commission certificate continued in effect and the operator had possession of two official papers based on convenience and necessity for the same route.

After the enactment of the 1938 New York statute, it is perfectly clear that one certificate — that of the Public Service Commission — would have contemplated both interstate and intrastate operation. Thus, because of the mere sequence of

statutory enactments, the carrier predecessor of Donnelly, the petitioner's transferor, had possession of separate certificates.

In 1948 both certificates were transferred to Donnelly. By the device of selling the two kinds of certificate to different parties, Donnelly in effect sought to grow on a single stem of authority two fruits; and to create separate operating rights over the same route.

He transferred the Federal certificate of 1935 to one carrier (W. T. Byrns Motor Express, Inc.). For this he needed approval of the Interstate Commerce Commission which, as we have seen, had originally issued the certificate in 1935.

The Interstate Commerce Commission conditioned its approval of this transfer to Byrns by providing that Donnelly, as transferor, should not conduct operations in interstate commerce " by virtue of the possession of any intrastate certificate now held by him ". This, of course, meant the certificate issued in 1938 by the Public Service Commission, the transfer of which is now before us.

Donnelly nevertheless then contracted to sell the Public Service Commission certificate of 1938 to petitioner; and in approving the transfer the Public Service Commission imposed the condition which is here reviewed.

That condition, as it has been seen, is that the holder shall not perform interstate service within the State " hereunder ". The effect of both the Interstate Commerce Commission condition on the transfer by Donnelly of the Federal certificate to one transferee; and of the Public Service Commission condition on the transfer by Donnelly of the State certificate to another transferee, this petitioner, is identical. That effect is that the certificates cannot be used to create two operations in interstate commerce by the device of separate transfers where there has been a single operation authorized and contemplated by both public agencies.

The argument of petitioner in effect is that although the right to engage in interstate commerce on this route within New York, possessed by Donnelly under the Interstate Commerce Commission certificate, has been transferred to Byrns, that a new right to engage in interstate commerce on the same route will spring into existence when petitioner receives the Public Service Commission certificate from Donnelly.

The restriction that will prevent this reduplication of operation lies within any reasonable construction of the Public Service Commission's power to issue licenses based on convenience and necessity; and it is a restriction which is both salutary and reasonable.

We deal, therefore, with a condition on the exercise of a privilege within the power of the State to grant, withhold, or grant in part, upon the compliance with reasonable conditions. The Public Service Commission seeks to prevent petitioner and its transferor from making two transportation operations open up where one existed before unless there is a further consideration of the basic questions of convenience and necessity. It has not been demonstrated this is either arbitrary or unreasonable.

Indeed, the only logical argument for such a result is the one petitioner pursues in part of its brief that no public authority can lawfully prevent it. We think that both as a matter of Federal delegation and State power the Public Service Commission can prevent it.

The order should be affirmed, with $50 costs.

FOSTER, P. J., GIBSON and HERLIHY, JJ., concur.

Order affirmed, with $50 costs.