**W. M. DANIELS, Plaintiff,**

v.

**UNITED STATES of America, Defendant,**

and

**Interstate Commerce Commission, and Great Northern Railway Company, Intervening Defendants.**

Civ. No. 896.

United States District Court
D. Montana,
Butte Division.

Oct. 19, 1962.

Rehearing Denied in Supplemental Opinion Dec. 14, 1962.

John W. Bonner and Sidney O. Smith, Helena, Mont., for plaintiff.

Lee Loevinger, Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., and Moody Brickett, U. S. Atty., for the District of Montana, Butte, Mont., for defendant, the United States.

Robert W. Ginnane, Gen. Counsel, and Arthur J. Cerra, Asst. Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for intervening defendant Interstate Commerce Commission.

Weir, Gough & Booth and Ward A. Shanahan, Helena, Mont., for intervening defendant, Great Northern Ry. Co.

Before JERTBERG and BROWNING, Circuit Judges, and JAMESON, District Judge.

PER CURIAM.

This is an action to review an order of the Interstate Commerce Commission dated November 21, 1961, in Docket No. MC–C–2507, W. M. Daniels-Investigation

of Second Proviso Eligibility. The sole question presented is whether plaintiff's interstate operations in Montana, pursuant to his Montana Interstate Permit M.R.C. No. 284, fall within the partial exemption of the second proviso of section 206(a) (1) of the Interstate Commerce Act.

Under section 206(a) (1) (49 U.S.C.A. § 306(a) (1)), except as otherwise provided therein " * * * no common carrier by motor vehicle * * * shall engage in any interstate or foreign operation on any public highway * * * unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations". The first proviso contains a "grandfather" clause which authorizes the issuance of certificates to carriers in operation prior to June 1, 1935.[1] Plaintiff does not claim any rights under this proviso. The second proviso reads in pertinent part:

*"provided further,* That this paragraph shall not be so construed as to require any such carrier lawfully engaged in operation solely within any State to obtain from the Commission a certificate authorizing the transportation by such carrier of passengers or property in interstate or foreign commerce between places within such State if there be a board in such State having authority to grant or approve such certificates and if such carrier has obtained such certificate from such board. Such transportation shall, however, be otherwise subject to the jurisdiction of the Commission under this part."

By statement filed February 3, 1958, plaintiff gave notice of his intention to engage in the transportation of property, in interstate or foreign commerce in Montana, under the second proviso of section 206(a) (1), in operations corresponding to those authorized in his Montana Interstate Permit, M.R.C. No. 284. Plaintiff's statement was rejected by the Commission, the Commission finding (1) that plaintiff had failed to establish that his operations in interstate commerce in Montana would come within the partial exemption of this proviso; and (2) that plaintiff was not authorized to engage in interstate commerce by virtue of the permit issued by the Montana Board.[2]

Prior to the enactment of the Motor Carrier Act of 1935 plaintiff obtained a certificate from the Board of Railroad Commissioners of the State of Montana authorizing interstate as well as intrastate operations.[3] On January 22, 1936, the Board reissued the certificate, with all amendments, in one document, M.R.C. No. 284, which authorized the transportation of property as a Class A carrier, in intrastate and interstate service, between the following Montana points:

(1) Butte and Philipsburg, via Anaconda;

(2) (a) Missoula and Helena,
    (b) Missoula and Butte,
    (c) Butte and Miles City,
    (d) Butte and Great Falls,

as a connecting carrier in interstate commerce.

(3) Butte and Missoula, via Garrison and Deer Lodge, in intrastate commerce, with a limitation that no service shall be given between Butte and Anaconda.

At plaintiff's request the Montana Board on March 8, 1943, ordered that plaintiff's operating rights be segregated into three certificates, as follows:

(1) *Intrastate Certificate* of Public Convenience and Necessity M.R.C. No. 284 (reissued) authorizing plaintiff to transport property as a common carrier by motor vehicle in *intrastate* service, Class A, between

---

1. This was the effective date of the Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq.

2. Reference will be made later herein to prior attempts to qualify under both provisos.

3. The certificates and permits issued to plaintiff were pursuant to the Montana Motor Carrier Act of 1931, Chapter 184, Laws of 1931 (now R.C.M.1947, §§ 8–101 to 8–128).

Butte and Missoula, via Anáconda and Philipsburg, together with the same right or rights between Butte and Missoula, via Deer Lodge and Garrison, except that service between Butte and Anaconda in intrastate service is prohibited.

(2) *Interstate Permit* M.R.C. No. 284 (reissued) authorizing plaintiff to transport property as a common carrier by motor vehicle, Class A, in *interstate* service between Butte and Missoula, via Anaconda and Philipsburg, together with the same right or rights between Butte and Missoula, via Deer Lodge and Garrison.

(3) *Interstate Permit* M.R.C. No. 284 (reissued) authorizing plaintiff to transport property as a common carrier by motor vehicle, Class A, in *interstate* service between Missoula and Helena; Missoula and Miles City, via Butte; and between Butte and Great Falls.[4]

This proceeding relates to the interstate permit described in subparagraph 3.[5] With respect to operations between Butte and Great Falls, plaintiff applied for a certificate under section 207(a)[6] of the Interstate Commerce Act, which was granted March 21, 1942, and subsequently sold by plaintiff.[7] By application for reg-

istration filed December 31, 1938, and by Form B.M.C. 75, Statement of Intent filed March 8, 1957, and February 3, 1958, plaintiff has sought registration pursuant to § 206(a) (1). Each application was rejected by the Commission.

On May 18, 1951, the Montana Board cancelled plaintiff's certificate or permit without notice or an opportunity to appear or to show cause why it should not be cancelled. The Supreme Court of Montana held that plaintiff accordingly was deprived of a property right without due process of law.[8]

As noted supra, the certificate or permit in question was issued by the Board of Railroad Commissioners of the State of Montana and authorizes *interstate* operations *only* and does not cover any intrastate operations. Nor does plaintiff hold any other intrastate rights over the same route. Plaintiff has not conducted any operations under the permit involved in this action.

Plaintiff contends that the certificate or permit having been issued by the Montana Board authorizing *interstate* operations within the state, he is entitled to the benefit of the exemption set forth in the second proviso of § 206(a) (1) and that the phrase "such certificates" obviously refers back to the phrase "a certifi-

---

4. The minutes of the meeting of the Montana Board of March 8, 1943, contain the following:

"This order is made merely for the purpose of correcting the form of said Certificate No. 284 previously issued on January 22, 1936, by proper segregation and for no other purpose, and shall not be considered as a passing on or a determination of the rights of the holder of said Certificate as originally issued, or by operation thereunder."

5. The intrastate certificate described in subparagraph 1 was sold by plaintiff, with the approval of the Montana Board, on March 15, 1943. Plaintiff applied for "grandfather rights" with respect to operations under interstate permit described in subparagraph 2. Authority granted pursuant to this application was subsequently sold by plaintiff in two parts, approved by the I.C.C. on December 15, 1942 and September 3, 1943, respectively.

6. Section 207(a) authorizes the issuance of a certificate to a qualified applicant upon proof of public convenience and necessity.

7. This sale was approved by the Interstate Commerce Commission on April 24, 1951, Docket No. MC–FC–53226. In the proceeding for a certificate under § 207, plaintiff also contended that he was entitled to "grandfather rights" because of his predecessor's bona fide operations. This claim was rejected by the Commission because plaintiff's predecessor, Independent Motor Carriers, had seasonably filed a "grandfather" application and was denied authority for failure to establish any rights under the grandfather clause.

8. State ex rel. Daniels v. Board of Railroad Commissioners, 1957, 131 Mont. 9, 306 P.2d 264.

cate authorizing the transportation by such carrier of passengers or property in interstate or foreign commerce between places within such State". Defendants contend that the second proviso of § 206 (a) (1) refers to *intrastate* certificates of public convenience and necessity; that the phrase "such certificates" means certificates of public convenience and necessity covering intrastate and not interstate operations, and that Congress did not intend by the second proviso to give state boards the right to issue interstate certificates of public convenience and necessity which would entitle them to automatic registration.

We are concerned first with the authority of a state, through its regulatory bodies, to issue interstate certificates of public convenience and necessity *prior* to the Motor Carrier Act of 1935. It is clear that in the absence of legislation by Congress dealing specifically with the subject, a state could (1) adopt regulations "to promote safety upon the highways and conservation in their use, * * * where the indirect burden imposed upon interstate commerce is not unreasonable";[9] and (2) impose "a fair and reasonable nondiscriminatory tax as compensation for the use of its highways".[10] It is equally clear that the state did not have authority to issue *interstate* certifi

cates of public convenience and necessity, in that this would "resort, through state officials, to a test which is peculiarly within the province of federal action— the existence of adequate facilities for conducting interstate commerce".[11]

In the *Motor Carrier Act of 1935*, "Congress * * * adopted a comprehensive plan for regulating the carriage of goods by motor truck in interstate commerce. The federal plan of control was so all-embracing that former power of states over interstate motor carriers was greatly reduced. No power at all was left in states to determine what carriers could or could not operate in interstate commerce. Exclusive power of the Federal Government to make this determination is shown by § 306 of 49 U.S.C. [A.] (§ 206 of Interstate Commerce Act) which describes the conditions under which the Interstate Commerce Commission can issue certificates of convenience and necessity." [12]

It was, of course, within the power of Congress to grant to a state the right to determine whether public convenience and necessity required interstate authority within that state and to make state issued interstate certificates eligible for filing under the second proviso of § 206 (a) (1).[13] This power, however, has not

9. Buck v. Kuykendall, 1925, 267 U.S. 307, 45 S.Ct. 324, 69 L.Ed. 623.

10. Aero Mayflower Transit Co. v. Board of Railroad Comm'rs, 1947, 332 U.S. 495, 503, 68 S.Ct. 167, 92 L.Ed. 99.

11. Buck v. Kuykendall, supra. See also George W. Bush & Sons Co. v. Maloy, 1925, 267 U.S. 317, 45 S.Ct. 326, 69 L.Ed. 627; Galveston Truck Line Corporation v. Allen, S.D.Tex.1933, 2 F.Supp. 488, aff'd in per curiam order, 1933, 289 U.S. 708, 53 S.Ct. 694, 77 L.Ed. 1463. Eichholz v. Public Service Commission, 1939, 306 U.S. 268, 622, 59 S.Ct. 532, 83 L.Ed. 641, and Fry Roofing Co. v. Wood, 1952, 344 U.S. 157, 162, 73 S.Ct. 204, 97 L. Ed. 168, upon which plaintiff relies, are distinguishable. In Eichholz the Court upheld a state rule requiring an interstate carrier to obtain a certificate to engage in *intrastate* business, holding that the rule was "designed to provide a

safeguard against the use of an interstate permit to circumvent the requirement of a certificate for intrastate traffic". Distinguishing Buck v. Kuykendall, Fry Roofing Co. v. Wood upheld a state requirement for a permit as a contract carrier where the State Commission disclaimed any "discretionary right to refuse to grant a permit * * * where (the) carriage is in interstate commerce", but required no more than registration with the appropriate agency. Even under these facts four justices dissented on the ground that the statute was a regulation of interstate commerce within the rule of Buck v. Kuykendall.

12. Castle v. Hayes Freight Lines, 1954, 348 U.S. 61, 63, 75 S.Ct. 191, 99 L.Ed. 68.

13. The plenary power of Congress over interstate commerce, derived from Article I, § 8, cl. 3 of the United States Con

been granted unless it was conferred by the proviso itself.

In determining congressional intent with respect to this proviso, both parties rely to some extent upon legislative history. With reference to the Act itself, the only other provision which might bear upon the intent of Congress is contained in § 203(a) (2) defining "board" and "state board" as the regulatory body or official having jurisdiction "to grant or approve certificates of public convenience and necessity or permits to motor carriers, or otherwise to regulate the business of transportation to motor vehicles, in intrastate commerce over the highways" of the state. In the report here under attack the Commission interpreted the second proviso in relation to the definition of "state board" as follows:

"The phrase 'to grant or approve certificates of public convenience and necessity * * * in intrastate commerce' should be read in *pari materia* with the second proviso phrase 'to grant or approve such certificates.' We interpret the language in the proviso to mean 'to grant or approve certificates of public convenience and necessity in intrastate commerce."

Plaintiff relies upon a statement made by Senator Burton K. Wheeler, Chairman of the Interstate Commerce Committee of the Senate, in presenting the Motor Carrier Act, where he said in part:

"Where a common carrier is engaged in interstate transportation but conducts his operations solely within a State and holds a certificate from that State, he is not required to apply for a federal certificate but is otherwise subject to federal registration." [14]

Defendants rely in part upon the report of the Federal Coordinator of Transportation proposing the bill which became the Motor Carrier Act of 1935. The explanation of § 206 reads:

"Section 306 (of the Bill) requires interstate common carriers to obtain certificates of public convenience and necessity. It adds a further proviso to section 4 of the Rayburn bill, to the effect that an intrastate common carrier need not obtain a Federal certificate to engage in interstate commerce between points within the State in which it operates." [15]

Since the enactment of the Motor Carrier Act, the Commission consistently has taken the position that to come within the exception contained in the second proviso of section 206(a) (1), there must be a state board having power to grant or approve certificates of public convenience and necessity authorizing intrastate operations, and that the carrier must have obtained an intrastate certificate from that board.[16] A leading case setting

---

stitution, was clearly recognized by the Supreme Court as early as 1824 in an opinion by Chief Justice Marshall in Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23.

14. Senator Wheeler's entire statement appears in the Congressional Record for April 15, 1935 (72 Cong. Record 5649–5670) and April 16, 1935 (72 Cong. Record 5735–5737). The part quoted appears at p. 5654. It will be noted that Senator Wheeler referred to "interstate operations" within a state—not to "interstate certificates".

15. Sen. Document No. 152, 73d Cong. 2d Sess. p. 46.

16. This interpretation of the Act was first embodied in Ruling No. 5, issued August 19, 1936, which reads in pertinent part:

"Question:
What is the nature of the State certificate which is to be accepted by this Commission in lieu of a finding of public convenience and necessity?
"Answer:
In that part of Section 206(a) which reads as follows: * * * 'if there be a board in such State having authority to grant or approve such certificates' * * * the word 'certificate' includes an authorization by any other name and refers to authority obtained from a State for intrastate common carrier operations, which requires a showing of public convenience and necessity. The word has no reference to State authority for interstate operations notwithstanding that such authority may have been denominated a 'certificate'."

forth this interpretation in detail is Gulf Coast Motor Freight Lines, Inc., Common Carrier Application 3 M.C.C. 497, 500 (Oct. 28, 1937) where the Commission held that a certificate issued by the Texas State Commission did not confer upon the carrier the right to engage in operations under the second proviso of § 206 (a) (1). The Commission was upheld in Gulf Coast Motor Freight Lines v. United States, S.D.Tex.1940, 35 F.Supp. 136.

Plaintiff argues that this case is not in point for the reason that the Texas commission had not been authorized by state law to issue certificates of convenience and necessity, whereas this authority was granted the Montana Board by the Montana Motor Carrier Act of 1931.[17] It is true that Gulf Coast expressly held that the permit under consideration was not a certificate of public convenience and necessity, but rather a permit or certificate issued under the state's police power, based on considerations of safety rather than traffic needs. On the other hand, the court held also that it was beyond the constitutional power of a state to "permit or prohibit carriage interstate on grounds of public convenience and necessity", citing Buck v. Kuykendall, supra, and other cases. The opinion continues:

"Nor is complainant any better served by its argument that the proviso in effect grants to State Boards the authority to issue certificates of public convenience and necessity to carriers carrying interstate between points solely within the state. For the very terms of the proviso, 'if there be a board in "such" state having authority to grant or approve "such" certificate', thus conditioning the certificates upon the existence in a state of a board having 'such' authority, flatly show that Congress is invoking power already in existence, as flatly exclude the idea that Congress is granting power."[18] (35 F. Supp. at 137.)

Plaintiff relies strongly upon Oswego Transportation Lines v. Feinberg, Sup. Ct.N.Y., 1959, 7 A.D.2d 268, 181 N.Y.S.2d 1007, aff'd 1961, 10 N.Y.2d 736, 219 N.Y. S.2d 409, 176 N.E.2d 916, where the court concluded that by the express language of the second proviso of § 206 Congress had delegated to the "New York Public Service Commission jurisdiction to pass on the certification of convenience and necessity for the motor transportation of goods in interstate commerce entirely within New York". It is true that the language in Oswego Transportation lends support to plaintiff's position. In the light of the factual situation there presented, however, it is not persuasive. That case involved the right of a state commission to impose conditions with respect to interstate operations upon the transfer of an *intrastate* certificate, which, according to the New York court, "would have contemplated both interstate and intrastate operation". The transferor also held a prior interstate certificate issued by the Interstate Commerce Commission. In approving the transfer of that certificate, the I.C.C. had provided that the transferor should not operate in interstate commerce "by virtue of the possession of any intrastate certificate held by him". In the transfer of the state certificate, the New York Commission imposed the condition that the transferee should not engage in interstate operations in New York. In upholding the Commission, the court said that the effect of the conditions imposed by both commissions "is that the certificates cannot be used to create two operations in

---

17. Section 23, Ch. 184, L.1931 (now R.C.M.1947 § 8–123) provides that the terms and conditions of the Act "shall apply * * * to commerce among the several states of this Union, insofar as such application may be permitted under the provisions of the constitution of the United States, treaties made thereunder and the acts of Congress; * * *."

18. We agree with Judge Hutcheson's opinion in this case that the proviso was "overcondensed at the expense of clarity", particularly in the over-use of the word "such", which appears eight times in the one sentence proviso.

interstate commerce by the device of separate transfers where there has been a single operation authorized and contemplated by both public agencies." (181 N.Y.S.2d 1014.)

The result in Oswego Transportation was obviously correct, but we do not agree with the language upon which plaintiff relies here; nor was the approach taken necessary to the decision. The same result would have followed had the court recognized that it was simply passing upon the power of a state commission to impose a condition upon the transfer of an *intrastate* certificate.

Compare Cumberland Motor Fr., Inc., v. Huber & Huber Motor Exp., Ky., 1958, 311 S.W.2d 398, decided under almost identical facts. There, as in Oswego Transportation, the court held that in the transfer of an *intrastate* certificate the state commission had jurisdiction to pass upon the transfer of interstate rights; but the court expressly recognized that § 206(a) (1) referred to the issuance and transfer of *intrastate* certificates. The court said in part: "If the state regulatory body had no jurisdiction to consider a transfer of the intrastate certificates, the question of a splitting of operating rights arising from a transfer of intrastate certificates could never arise. The I.C.C. could not exercise any jurisdiction, because it has no authority to provide for a transfer of interstate operating rights based upon registration under Section 206(a) (1). Those rights can exist only in favor of a carrier who holds intrastate certificates, and obviously the I.C.C. cannot order the state regulatory body to make a transfer of the intrastate certificates." We agree with the reasoning of the Kentucky court.[19] In any event, both cases involved interstate operating rights in connection with the transfer of an *intrastate* certifi-

cate, and not, as here, an attempt to register an *interstate* permit.

It is clear also that Congress has recognized the Commission's interpretation of § 206(a) in various reports on proposed amendments to this section. A report of the Senate Committee on Interstate and Foreign Commerce dated July 11, 1961, recommending amendments to § 206(a) (1), reads in pertinent part:

"The existing second proviso of section 206(a) (1) of the Interstate Commerce Act enables motor common carriers whose operations are confined to a single State and who have been granted a certificate to allow operation within the State from their State regulatory bodies, to also engage in operations in interstate and foreign commerce. Such operations in interstate and foreign commerce must, of course, be carried on entirely within the State in which the motor carrier is certificated to operate.

"At present the right to engage in interstate or foreign commerce by an *intrastate carrier* is automatically obtained by filing its State certificate with the Interstate Commerce Commission. *The carrier by such filing is then authorized to engage in interstate or foreign commerce to the same extent that the carrier is authorized to engage in intrastate commerce as described in the particular State certificate filed* with the Commission."[20] (Emphasis supplied.)

To what extent may this court consider "legislative history" in construing the proviso in question? As a general rule, legislative intent must be ascertained from the text of the statute if the words are clear, plain, and unambiguous.[21] Where, however, the literal words

---

19. See also Cumberland Motor Frgt., Inc. v. Huber & Huber Motor Exp., Ky., 1959, 328 S.W.2d 534.

20. Sen. Report No. 528, 87th Cong. 1st Sess., p. 1. See also Sen. Report No. 1648, June 22, 1960, 86th Cong. 2d Sess.;

House Report No. 1090, August 31, 1961, 87th Cong. 1st Sess.; Sen. Report No. 1650, April 26, 1938, 75th Cong. 2d Sess.

21. Addison v. Holly Hill Co., 322 U.S. 607. 64 S.Ct. 1215, 88 L.Ed. 1488; Van Camp & Sons v. American Can Co., 278 U.S.

bring about an "absurd or futile result" or one "plainly at variance with the purpose of the legislation as a whole", legislative purpose is followed rather than the literal words;[22] and "there is wisely no rule of law forbidding resort to explanatory legislative history no matter how 'clear the words may appear on "superficial examination." ' " [23] In "construing a statute not unambiguous", there may be utilized "all the light relevantly shed upon the words and the clause and the statute that express the purpose of Congress".[24] This includes reports of committees and statements of committee members in charge of a bill,[25] and the interpretation of the executive department or agency charged with its administration and enforcement.[26] An expression of opinion as to the meaning of a statute made by the same congressional committee which considered the statute may be considered, particularly where the report is made within a reasonable time after the enactment of the statute and relates specifically to the construction in question.[27]

■■ It is our conclusion that the intent of Congress may not be ascertained from the wording of the proviso itself, and that we may properly consider the legislative history, the interpretation of the proviso made by the Interstate Commerce Commission and followed consistently for more than 25 years, and the subsequent reports of the Senate and House Committees on Interstate and Foreign Commerce recognizing the Commission's interpretation in their consideration of amendments to the proviso. Considering all of these aids in determining congressional intent, we conclude that the Commission correctly rejected plaintiff's application for registration of his permit.

■ As the Supreme Court said in Castle v. Hayes Freight Lines, supra, under the Motor Carrier Act of 1935 the federal plan of control over carriers engaged in interstate commerce was all embracing, including exclusive power in the

245, 49 S.Ct. 112, 73 L.Ed. 311; Fisher Flouring Mills Company v. United States, 9 Cir. 1958, rehearg en banc 1959, 270 F.2d 27; Anderson v. United States Civil Service Commission, D.Mont.1954, 119 F. Supp. 567.

22. United States v. Public Utilities Comm'n., 1953, 345 U.S. 295, 315, 73 S.Ct. 706, 97 L.Ed. 1020; United States v. American Trucking Ass'ns, 1940, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345, construing other provisions of the Motor Carrier Act.

23. Harrison v. Northern Trust Co., 1943, 317 U.S. 476, 479, 63 S.Ct. 361, 87 L. Ed. 407; United States v. American Trucking Ass'ns, supra.

24. United States v. Universal Corp., 1952, 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260, where the Court said further: "Very early Mr. Chief Justice Marshall told us, 'Where the mind labours to discover the design of the legislature, it seizes every thing from which aid can be derived * * *.' United States v. Fisher, 2 Cranch 358, 386, 2 L.Ed. 304."

25. United States v. St. Paul M. & M. R. Co., 1918, 247 U.S. 310, 318, 38 S.Ct. 525, 62 L.Ed. 1130; Power Reactor Co. v. International Unions of Electricians,

1961, 367 U.S. 396, 81 S.Ct. 1529, 6 L. L.Ed.2d 924.

26. "The practical interpretation of an ambiguous or uncertain statute by the Executive Department charged with its administration is entitled to the highest respect; and, if acted upon for a number of years, will not be disturbed except for very cogent reasons." Logan v. Davis, 1914, 233 U.S. 613, 34 S.Ct. 685, 58 L.Ed. 1121. United States v. Jackson, 1930, 280 U.S. 183, 193, 50 S.Ct. 143, 74 L.Ed. 361; United States v. American Trucking Ass'ns, supra; United States v. Short, 9 Cir. 1956, 240 F.2d 292. Such an interpretation, however, is not conclusive. United States v. Mo. Pac. R. Co., 1929, 278 U.S. 269, 49 S.Ct. 133, 73 L. Ed. 322; County of Marin v. United States, 1958, 356 U.S. 412, 420, 78 S.Ct. 880, 2 L.Ed.2d 879.

27. Socony Mobil Oil Co. v. United States, Ct.Cl.1961, 287 F.2d 910, 914, rehearing denied Texaco, Inc. v. United States, 289 F.2d 326; Sioux Tribe of Indians v. United States, 1942, 316 U.S. 317, 329, 62 S.Ct. 1095, 86 L.Ed. 1501. An interpretation by a subsequent Congress many years later, however, has been held to have little, if any, significance. Rainwater v. United States, 1958, 356 U.S. 590, 593, 78 S.Ct. 946, 2 L.Ed.2d 996.

federal government to determine what carriers could or could not engage in interstate commerce. An exemption authorizing a state commission to issue interstate certificates of public convenience and necessity to carriers who had no corresponding intrastate rights would produce a result contrary to the policy of the Act.

The second proviso of § 206(a) (1) was but one of three methods by which interstate operating rights could be acquired or confirmed. Those motor carriers who were in "bona fide operation" on June 1, 1935, under interstate permits issued by a state could claim exemption under the "grandfather" clause contained in the first proviso. If they could not qualify under the grandfather clause, they could apply under § 207(a) for the acquisition of a new operating authority upon proof of public convenience and necessity. Plaintiff himself utilized both procedures.[28] The only reasonable construction of the second proviso consistent with the policy of the Act is that adopted by the Commission, i. e., to authorize carriers with *intrastate* certificates to obtain interstate authority over the same route without proof of public convenience and necessity under § 207.

Judgment will be entered dismissing plaintiff's complaint.

## SUPPLEMENTAL OPINION

### PER CURIAM.

In petition for rehearing and brief in support of motion for new trial, plaintiff argues that the amendment of Section 206(a) (1) of the Interstate Commerce Act (49 U.S.C.A. § 306(a) (1)) contained in Public Law 87–805, 87th Cong. S. 320, Oct. 15, 1962, supports plaintiff's position that, prior to this amendment, plaintiff was entitled to the benefit of the exemption provision contained in the second proviso of the section. We find nothing in the Act itself or its legislative history to justify this conclusion.

The legislative history as embodied in Senate Report No. 528, 87th Cong. 1st Sess., Senate Report No. 1648, 86th Cong. 2d Sess., and House Report No. 1090, 87th Cong. 1st Sess., was reviewed in the original opinion. Plaintiff's reply brief quotes from the explanation of S. 320 by Congressman Harris of Arkansas, which reads in pertinent part:

"At present the right to engage in interstate or foreign commerce by an *intrastate* carrier is automatically obtained by filing its State certificate with the Interstate Commerce Commission. The carrier by such filing is then authorized to engage in interstate or foreign commerce to the same extent that the carrier is authorized to engage in *intrastate* commerce as described in the particular State certificate filed with the Commission." (Emphasis supplied.)

The amendment deletes the second proviso of section 206(a) (1) and prescribes the procedure for common carriers operating within a single state to engage in interstate operations within the state where a carrier has obtained "a certificate of public convenience and necessity authorizing motor vehicle common carrier operations in intrastate commerce * * *".

Plaintiff here seeks registration of a certificate authorizing *interstate* operations *only*. Plaintiff's certificate does not cover any *intrastate* operations; nor does plaintiff hold any other *intrastate* rights over the same route.

■■ Under section 206(a) (1), both prior to amendment and after amendment, *intrastate* rights and an *intrastate* certificate form the basis of acquisition of interstate rights within the state. No grant of interstate rights is

---

28. As noted supra, plaintiff claimed "grandfather" rights with respect to both interstate permits. His application was granted as to one permit. See note 5. And in connection with the permit in question, he received authority upon proof of public convenience and necessity under § 207 for operating rights covering part of the route.

contemplated to a carrier who has no corresponding intrastate rights. In this respect no change was effected by Public Law 87–805.

The petition for rehearing and motion for new trial are denied.